2015-1642

———————————————————

# United States Court of Appeals
# for the Federal Circuit

———————————————————

MACROSOLVE, INC.
*Plaintiff—Appellee,*

*v.*

GOVERNMENT EMPLOYEES INSURANCE COMPANY,
*Defendant,*

&.

NEWEGG INC.,
*Defendant-Appellant.*

———————————————————

On Appeal From the United States District Court for the Eastern District of
Texas, Case No. 6:11-cv-287, Judge Michael H. Schneider

———————————————————

**BRIEF OF APPELLEE MACROSOLVE, INC.**

———————————————————

MATTHEW J. ANTONELLI
ZACHARIAH S. HARRINGTON
LARRY D. THOMPSON, JR.
CALIFF T. COOPER
ANTONELLI, HARRINGTON &
THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000
(713) 581-3020 (fax)

*Attorneys for Appellee
MacroSolve, Inc.*

August 19, 2015

# CERTIFICATE OF INTEREST

Counsel for Appellee MacroSolve, Inc. certifies:

1.    The full name of every party or amicus represented by me:

MacroSolve, Inc. (now known as Drone Aviation Holding Corp.)

2.    The names of the real parties in interest represented by me:

MacroSolve, Inc. (now known as Drone Aviation Holding Corp.)

3.    There are no parent corporations or any publicly held companies that

own 10% or more of the stock of MacroSolve, Inc. (now known as Drone

Aviation Holding Corp.).

4.    The names of all law firms, partners or associates that appeared for

the parties represented by me in the trial court or expected to appear in this

Court:

Matthew J. Antonelli; Zachariah S. Harrington; Larry D. Thompson, Jr.; Kris Y. Teng; Califf T. Cooper; Kris Y. Teng; Antonelli, Harrington & Thompson LLP

S. Calivn Capshaw, III; Elizbeth L. DeRieux; Daymon J. Rambin; Capshaw DeRieux LLP


Dated: August 19, 2015                */s/ Matthew J. Antonelli*
                                      Matthew J. Antonelli
                                      Counsel for MacroSolve, Inc.

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ..................................................... i

TABLE OF CONTENTS ............................................................ ii

TABLE OF AUTHORITIES ......................................................... iv

STATEMENT OF RELATED CASES ......................................... vi

PRELIMINARY STATEMENT ................................................... 1

STATEMENT OF THE ISSUES ................................................... 4

STATEMENT OF FACTS ............................................................. 4

I.      MACROSOLVE DEVELOPED AND PRACTICED THE
        CLAIMED INVENTION .................................................... 4

II.     MACROSOLVE ACTED REASONABLY IN
        PROSECUTING THE ACTION AGAINST NEWEGG .................. 5

III.    NEWEGG ACTED UNREASONABLY IN DEFENDING
        THE ACTION ................................................................... 6

IV.     MACROSOLVE DISMISSED ITS CASE BASED ON
        ACTION TAKEN BY THE PATENT OFFICE IN
        REEXAMINATION ............................................................ 8

V.      MACROSOLVE'S SETTLEMENT WERE NOT MADE IN
        BAD FAITH ..................................................................... 9

VI.     NEWEGG IS THE ONLY DEFENDANT WHO
        DEMANDED ATTORNEYS FEES ......................................... 10

VII.    NEWEGG'S POLICY IS TO IMPOSE COSTS ON PATENT
        OWNERS, INCLUDING BY MOVING FOR ATTORNEYS
        FEES NO MATTER WHAT ................................................. 11

SUMMARY OF ARGUMENT ..................................................... 13

ARGUMENT ............................................................................. 13

I.      STANDARD OF REVIEW ................................................... 13

II.    THE DISTRICT COURT DID NOT ABUSE ITS
       DISCRETION IN REJECTING NEWEGG'S ARGUMENT
       THAT MACROSOLVE'S INFRINGEMENT CASE WAS
       EXCEPTIONALLY WEAK .......................................................... 14

       A.    MacroSolve's Position That Newegg's Mobile App
             Met The Questionnaire Limitations Was Reasonable ........... 15

       B.    MacroSolve's Joint Direct Infringement Theory Was
             Reasonable ........................................................................... 22

       C.    MacroSolve's Inducement Theory Was Reasonable .............. 24

       D.    MacroSolve's Contributory Infringement Theory Was
             Reasonable ........................................................................... 29

III.   THE DISTRICT COURT DID NOT ABUSE ITS
       DISCRETION IN REJECTING NEWEGG'S ARGUMENT
       THAT MACROSOLVE ACTED IN BAD FAITH .......................... 31

IV.    THE DISTRICT COURT DID NOT ERR IN REJECTING
       NEWEGG'S REQUEST THAT IT INVOKE ITS
       INHERENT POWERS TO SANCTION MACROSOLVE ............. 35

CONCLUSION ......................................................................................... 37

CERTIFICATE OF SERVICE .................................................................. 38

CERTIFICATE OF COMPLIANCE .......................................................... 39

# TABLE OF AUTHORITIES

## Cases

*Akamai Tech., Inc. v. Limelight Networks, Inc.*,
  2015 U.S. App. LEXIS 14175 (Fed. Cir. Aug. 13, 2015) ...................... 23

*CardSoft (Assignment for the Benefit of Creditors), LLC v. VeriFone, Inc.*,
  769 F.3d 1114 (Fed. Cir. 2014) ........................................................... 36

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ............................................................................... 36

*Crowe v. Smith*,
  151 F.3d 217 (5th Cir. 1998) ............................................................... 14

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
  134 S. Ct. 1744 (2014) ........................................................................ 13

*Function Media, L.L.C. v. Google Inc.*,
  708 F.3d 1310 (Fed. Cir. 2013) ........................................................... 14

*MarcTec, LLC v. Johnson & Johnson*,
  664 F.3d 907 (Fed. Cir. 2012) ............................................................. 36

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*,
  370 F.3d 1354 (Fed. Cir. 2004) ........................................................... 26

*Monsanto Co. v. E.I. Du Pont de Nemours & Co.*,
  748 F.3d 1189 (Fed. Cir. 2014) ........................................................... 14

*Procter & Gamble Co. v. Amway Corp.*,
  376 F.3d 496 (5th Cir. 2004) ............................................................... 36

*Ricoh Company, Ltd. v. Quanta Computer Inc.*,
  550 F.3d 1325 (Fed. Cir. 2008) ........................................................... 29

*SFA Sys., LLC v. Newegg, Inc.*,
  2015 U.S. App. LEXIS 11892, (Fed. Cir. July 10, 2015) ...................... 32

*Thomas v. Arn*,
  474 U.S. 140 (1985) ............................................................................. 30

iv

**Rules**

Fed. R. Civ. P. 72(a) ................................................................. 22, 36

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Appellee provides as follows:

(a)    There have been no other appeals in this civil action or any related cases.

(b)    There are no other actions now pending in this or any other court that will be directly affected by this Court's decision in the present appeal.

# PRELIMINARY STATEMENT

*We were going to make ourselves a very undesirable*
*target for all lawsuits . . . No plaintiff will be allowed to*
*file a lawsuit against Newegg without negative*
*consequences . . . .*

Lee Cheng, Chief Legal Officer of Newegg

Newegg did not move for attorneys fees because something even arguably

exceptional happened below.  Nor did Newegg file this appeal because of anything

approaching an abuse of discretion by the district court in denying Newegg's

motion for fees.  Rather, Newegg filed its motion for fees, and this appeal, solely to

advance its publicly announced program of trying to intimidate patent owners from

seeking to vindicate their patent rights against Newegg.

Newegg utterly failed to support its arguments below that MacroSolve's

positions were "frivolous," "objectively baseless," or "exceptionally weak."

Worse, Newegg's charge that MacroSolve's positions were unreasonable was

based on arguments that Newegg had previously abandoned or lost during the

*Markman* proceedings.  As the district court concluded, Newegg did not simply

fail to carry its burden.  Rather, the history of Newegg's positions during *Markman*

**refuted** Newegg's assertion that MacroSolve's infringement positions were

unreasonable.

For the same reasons, Newegg also failed to show that anything justified its

request that the district court invoke its inherent power to order MacroSolve to pay

Newegg's expert fees and non-taxable costs. And in any event, Newegg waived its request for expert fees and non-taxable costs by failing to object to the magistrate judge's denial of that request.

Unable to establish that any position that MacroSolve took on the merits of its case was unreasonable, Newegg attacked MacroSolve's motives. Newegg attempted to cast MacroSolve—a publicly traded company that was founded by the inventor of the patent-in-suit and that was practicing its patent both before and after it sued Newegg—as a "troll" that tried to use the cost of litigation to unfairly leverage a nuisance settlement from Newegg. Newegg repeatedly asserted that MacroSolve was an "abusive patent asserter" that was attempting to "squeeze" and "extort" unfair settlements. But Newegg argued that those conclusions should be inferred *solely* from the fact that MacroSolve sued a large number of defendants, that MacroSolve settled against many of them for relatively modest amounts, and that MacroSolve dropped its case against Newegg before a motions hearing.

It is hard to see why MacroSolve should be questioned for its litigation and settlement strategies. Nevertheless, in response to Newegg's arguments, MacroSolve provided perfectly innocent explanations for its strategies. Relatively modest settlements from a large number of defendants made sense because a large number of corporations had engaged in one-off infringements of MacroSolve's patent. MacroSolve's settlements were also driven by the fact that MacroSolve

2

was suffering from financial difficulties—difficulties that Newegg specifically announced that it was trying to take advantage of.  And the timing of MacroSolve's dismissal of Newegg had nothing to do with the summary judgment motions that Newegg had filed (which were themselves frivolous).  Rather, MacroSolve dismissed all of its pending cases because the Patent Office had issued a final rejection of the patent-in-suit during a reexamination just a few days earlier—a fact that Newegg simply ignored in its briefing below.  In view of these explanations, there was no basis to conclude that MacroSolve's settlement and litigation strategies must have been driven by its case being exceptionally weak on the merits.

The district court did not fail to consider these issues.  The district court summarized Newegg's and MacroSolve's position on each of these issues.  And the district court explained why it was crediting MacroSolve's, and not Newegg's, explanation for each of them.  On appeal, Newegg makes the same arguments that it made below (and more) and essentially asks this Court to replace its judgment for the district court's.  But Newegg has no coherent theory of how the district court supposedly abused its discretion, or how the relief it seeks is consistent with the Supreme Court's recent *Highmark* decision.

It is no secret that Newegg's strategy is to inflict as much pain as possible on patent owners like MacroSolve who have the temerity to assert their patents

against Newegg.  But that is not a legitimate reason for Newegg to have filed its

motions for fees below.  And it certainly is not a legitimate reason for Newegg to

have now filed this appeal.

## STATEMENT OF THE ISSUES

1.    Did the district court abuse its discretion in rejecting Newegg's arguments

that MacroSolve's infringement positions were exceptionally weak?

2.    Did the district court abuse its discretion in rejecting Newegg's arguments

that MacroSolve acted in bad faith?

3.    Did the district court abuse its discretion in rejecting Newegg's request that

it invoke its inherent powers to sanction MacroSolve?

## STATEMENT OF FACTS

### I.    MACROSOLVE DEVELOPED AND PRACTICED THE CLAIMED INVENTION

MacroSolve is a publicly traded company that was founded by David Payne,

the inventor of the patent-in-suit. In addition to developing its own patented

technology, MacroSolve practiced it for many years, including after it sued

Newegg for patent infringement.  A1000-03; A1665-69.  MacroSolve's primary

product was its ReForm XT$^{TM}$ platform for creating and supporting mobile

applications using its patented technology.  A1665.  And MacroSolve has offered

and sold mobile applications powered by its ReForm XT$^{TM}$ platform to many

customers, including, for example, Enterprise Rent-A-Car, T.G.I. Fridays, and the

4

University of Tulsa.  A1655; A3432.  MacroSolve continued to practice its patent through its Illume Mobile division, up to, and after, the filing of this lawsuit. A1000-03; A1665-69.  Because of financial difficulties, in July of 2012—only after this lawsuit was filed against Newegg—MacroSolve sold its operating division, including its ReForm XT$^{TM}$ platform, to DecisionPoint Systems, Inc. A1000-03; A1655; A3432.  Thereafter, DecisionPoint continued the business of designing and developing mobile applications for customers. *See* A3432.

## II.    MACROSOLVE ACTED REASONABLY IN PROSECUTING THE ACTION AGAINST NEWEGG

MacroSolve prosecuted the action responsibly, taking reasonable positions on the merits. A good example is *Markman*. The district court's *Markman* order adopted virtually all of MacroSolve's positions (including compromises proposed by the district court at the *Markman* hearing that were acceptable to MacroSolve) and rejected virtually all of the positions advanced by Newegg and its co-defendant Geico. *See* A3399-430.

MacroSolve also took reasonable steps to limit unnecessary costs, not only for itself, but also for Newegg. For example, MacroSolve voluntarily agreed to the district court's model e-discovery order to limit costs associated with electronic discovery. *See* A1047-51. And MacroSolve sought only targeted discovery against Newegg. For example, MacroSolve took only three depositions of Newegg witnesses: an initial ESI deposition, a 30(b)(6) deposition, and a deposition of a

single additional witness whom Newegg said it would bring to trial.

## III.  NEWEGG ACTED UNREASONABLY IN DEFENDING THE ACTION

Newegg made every effort to take advantage of MacroSolve's limited financial resources. *See, e.g.*, A3437 ("After looking at the company's financials, Cheng [the chief legal officer of Newegg] and his advisors saw that [MacroSolve] was not highly capitalized. . . . It didn't have the resources to push through a trial, perhaps not even for discovery and claim construction.").

For example, Newegg started the case by dumping a massive set of invalidity contentions on MacroSolve. Newegg relied on at least 250 separate prior-art references, which was more than 10,000 pages of prior art. A1166; A3278-79.  Newegg's claim charts alone spanned 2,000 pages. A3279.  Despite repeated requests by MacroSolve that Newegg limit its invalidity case to something more reasonable, Newegg maintained all of this prior art in the case until the day opening expert reports were due. Worse, despite already having more than 250 prior-art references in the case, Newegg repeatedly moved to expand its invalidity contentions. *See, e.g.,* A1135-43; A1162-71; A1429-37.

Newegg also took unreasonable positions on summary judgment. For example, Newegg filed a motion for summary judgment of invalidity that was primarily based on a prior-art reference that the district court had already expressly ruled that Newegg could not add to the case. *See* A1136-37 (Motion to Amend

Invalidity Contentions seeking to add Kloba), A1162-71 (Order denying motion to add Kloba); A1791, n.1 (Motion for Summary Judgment of Invalidity moving largely based on Kloba). Similarly, Newegg attempted to assert an "unclean hands" defense, and opposed MacroSolve's motion for summary judgment on unclean hands, even though Newegg (1) did not plead that defense and (2) did not disclose that defense in response to an interrogatory seeking the basis for any of Newegg's affirmative defenses. *See, generally,* A2999. Finally, as discussed below, Newegg made the same unreasonable arguments that it is making now, including arguments that it already lost or abandoned, in support of its motion for summary judgment of non-infringement.

Finally, shortly after Newegg provided its financial information to MacroSolve, MacroSolve determined that the damages against Newegg were substantially lower than those against Geico. (MacroSolve's expert determined that the damages claim against Newegg was approximately $300,000, as opposed to approximately $13,000,000 against Geico, the only other remaining defendant.) *Compare* A1568 *with* A1655. In view of this determination, MacroSolve proposed a walkaway, and even offered to give Newegg a license to any patent it obtained in the future. A3677. Newegg refused, solely in an attempt to force MacroSolve to pay its fees. *See* A3677-79.

## IV.    MACROSOLVE DISMISSED ITS CASES BASED ON ACTION TAKEN BY THE PATENT OFFICE IN REEXAMINATION

Newegg repeatedly asserts that MacroSolve's dismissal of this action shows bad faith because it was an attempt to avoid summary judgment. *See, e.g.,* Motion at 11.  But what Newegg completely failed to acknowledge below—and what Newegg attempts to minimize with new arguments presented for the first time on appeal—is that mere days before MacroSolve's dismissal the Patent Office issued a final office action rejecting all of the claims of the patent-in-suit. *See* A3441-78. That is why MacroSolve dismissed this case, as well as all of its other pending cases.

MacroSolve was facing challenges to the validity of its patent (1) in the district court actions, (2) in an *ex parte* reexamination filed by Newegg's co-defendant Geico; and (3) in an IPR review filed by RPX.  A3280.  At the same time, MacroSolve was fighting the Patent Office to obtain allowance of its pending continuation patent application. MacroSolve did not have the resources to continue this multi-front war. So MacroSolve had a difficult decision to make.

The next step for MacroSolve in response to the final office action would have been an expensive appeal to the Board of Patent Appeals, and then to the Court of Appeals for the Federal Circuit.  And even if those appeals were successful, MacroSolve would still had to fight the IPR, which promised to be another expensive battle. *See* A3480 (reporting former Chief Judge Rader's

8

contemporaneous statement that "in the PTAB, there will soon be as many as 300 administrative patent judges 'acting as death squads, killing property rights'").  So MacroSolve decided to focus its limited resources on its pending continuation application and decided not to continue to fight the reexaminations.

Accordingly, MacroSolve knew that the Patent Office would soon cancel the patent-in-suit. So MacroSolve did the right thing and offered to immediately dismiss each of its pending cases asserting the patent-in-suit, including the case against Newegg.[1]

## V.     MACROSOLVE'S SETTLEMENTS WERE NOT MADE IN BAD FAITH

As Newegg repeatedly points out, MacroSolve sued a large number of defendants, and settled with many of them for relatively modest sums.  But MacroSolve's settlements were based on numerous factors, for example MacroSolve's own financial issues, issues which Newegg was well aware of and which Newegg tried to take unfair advantage of.  They do not support an inference that there must have been something wrong with MacroSolve's cases on the merits.

Given the nature of the infringement of MacroSolve's patent, MacroSolve's litigation and settlement strategy made perfect sense.  MacroSolve initially focused

---

[1]The final office action in the reexamination was based on prior art not at issue in the litigation. So even putting aside the good arguments that MacroSolve could have made in an appeal of the office action, nothing about the action taken by the Patent Office shows that the litigation was maintained in bad faith.

on suing mobile app developers, but quickly learned that most corporations individually create their mobile applications in-house.   Given the reality that infringement of its patent typically took the form of a one-off mobile app designed and put out by a large corporation, it was necessary for MacroSolve to file suit against a large number of corporations to enforce its patent rights.   And given that reality, it makes sense that MacroSolve settled its cases for relatively modest amounts.

Indeed, despite Newegg's repeated invocation of a footnote in MacroSolve's expert report on damages against Newegg that mentioned $32 million, the truth is that the best damages theory MacroSolve was ultimately able to present against Newegg was for $300,000.  A1568.  And Newegg's position was that if it was liable for infringing, damages would be no more than $50,000.  A6012.  In view of those damages positions, settlements in the $75,000 range (roughly MacroSolve's average settlement amount) are certainly not so out-of-line with reality that they show that something must have been wrong with MacroSolve's case on the merits.

## VI.    NEWEGG IS THE ONLY DEFENDANT WHO DEMANDED ATTORNEYS FEES

After the final office action, MacroSolve offered to dismiss its case against every remaining defendant in every lawsuit filed by MacroSolve, not just its case against Newegg.  And each of those defendants, except for Newegg, agreed to a dismissal with each side bearing its own costs and fees. *See* A3105 (Geico); A6000

(Carlson Hotels); A6001 (Chipotle); A6002 (Dropbox); A6003 (Five Guys); A6004 (HBO); A6005 (MediaFire); and A6006 (Meetup).  Newegg alone demanded attorneys fees.  A3106-26.

## VII.  NEWEGG'S POLICY IS TO IMPOSE COSTS ON PATENT OWNERS, INCLUDING BY MOVING FOR ATTORNEYS FEES NO MATTER WHAT

Newegg was going to bring its motion for attorneys fees (and, if it lost, this appeal) regardless of the merits of its exceptional case theories.

Newegg says that MacroSolve is a "patent troll."  *See, e.g.,* A3685. Newegg tags patent owners with that pejorative[2] when it decides for itself (despite the presumption of validity) that a patent is "bad quality" or when it decides for itself that patent owners are settling cases too cheaply.  *See, e.g.,* A3506.

In practice, Newegg concludes that virtually every patent owner that sues it is a "troll."  *See, e.g.,* A3512 ("Defining a troll for Cheng is simple. 'I know a troll when I see one,' he said. 'I know a troll when they sue us.'"); A3517 ("Even though Alcatel-Lucent has billions in revenue from real businesses, when it comes to patent battles Cheng doesn't see them as being so different. Since Alcatel is asserting patents in markets it's nowhere near actually participating in he sees them as a kind of 'corporate troll.'").

---

[2] Or much worse. *See, e.g.,* A3499 ("vampires"); A3502 ("bastards"); A3504 ("scum-sucking douchebags"); A3436 ("asshats").

Newegg has adopted a "screw them" policy under which Newegg will ***never*** settle with a plaintiff that it has decided is a "troll." *See, e.g.,* A3516 ("Newegg, a company whose top lawyer has vowed not to ever settle with patent trolls."); A3521 ("Newegg never settles with patent trolls. Lee Cheng, Newegg's chief legal officer, has made it corporate policy."); A3526 ("[F]ew have gone quite as far as Newegg to flat out declare very publicly that they will never settle with a patent troll."); A3535 ("***Screw them. Seriously, screw them. You can quote me on that.***") (emphasis added).

But that is not the full extent of Newegg's "screw them" policy. Newegg has also announced that its program includes seeking to impose costs on plaintiffs. *See, e.g.,* A3539 ("But the strategic result Cheng wanted wasn't just to mount any defense. '***We were going to make ourselves a very undesirable target for all lawsuits***,' he recalls."); A3540 ("And what does Cheng's fervent pursuit of fairness mean for Newegg? '***No plaintiff will be allowed to file a lawsuit against Newegg without negative consequences***,' he says.") (emphasis added); A3543 ("He said ***he wants nonpracticing entities to know that 'suing Newegg is a money-losing proposition***' compared to companies that settle."); A3548 ("Our message:  Sue Newegg, lose money. I'm trademarking that slogan.").

To that end, Newegg has specifically announced that it will move for attorney fees against patent plaintiffs, regardless of the high bar for such relief:

So our position is well ***screw you guys***. We are going to make you remember that when you file a frivolous lawsuit against Newegg, its going to have a negative consequence. ***If you think you can just walk away because the standards for seeking fees is very high, think again because we are going to file a fee motion***, ***and we are going to appeal every single adverse decision until the law changes in this field.***

A3550 at 29:09 (http://twit.tv/show/this-week-in-law/229). Indeed, Newegg has specifically announced that its demand for fees in this case is part of its "screw them" strategy. *See* A3437 ("Sorry guys, ***this is part of our strategy***. People like you [MacroSolve] do not get to sue Newegg without consequence.") (emphasis added).

## SUMMARY OF ARGUMENT

The Court should affirm the district court's denial of Newegg's motion for fees on the grounds that the district court did not abuse its discretion where MacroSolve's positions were reasonable and it did not act in bad faith. Newegg's track record of fighting for fees in nearly every patent infringement case regardless of the merits is most evident in this case where its arguments center on issues it lost, ignored, or gave up below.

## ARGUMENT

## I.    STANDARD OF REVIEW

This Court should review the district court's denial of Newegg's motion for fees for an abuse of discretion. *See Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.,* 134 S. Ct. 1744, 1747 (2014) ("[W]e hold that an appellate court should

review all aspects of a district court's § 285 determination for abuse of discretion.").

Whether Newegg waived the right to appeal certain issues is to be decided in the first instance by this Court. *See, e.g., Function Media, L.L.C. v. Google Inc.*, 708 F.3d 1310, 1325 (Fed. Cir. 2013)

To the extent this Court determines that Newegg did not waive the issue, the Court should review the district court's denial of expert fees and non-taxable costs under its inherent powers for an abuse of discretion. *Monsanto Co. v. E.I. Du Pont de Nemours & Co.,* 748 F.3d 1189, 1196 (Fed. Cir. 2014) ("When reviewing the imposition of sanctions under a district court's inherent powers, we apply the law of the regional circuit in which the district court sits . . . ."); *Crowe v. Smith*, 151 F.3d 217, 226 (5th Cir. 1998) ("We review a district court's imposition of sanctions under its inherent power for abuse of discretion.").

## II.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN REJECTING NEWEGG'S ARGUMENT THAT MACROSOLVE'S INFRINGEMENT CASE WAS EXCEPTIONALLY WEAK

Newegg argues that MacroSolve's infringement case was "frivolous," "objectively unreasonable," or "exceptionally weak," for various reasons. But, as the district court concluded, the history of Newegg's *Markman* positions refutes Newegg's arguments. Also, Newegg waived many of them.

### A. MacroSolve's Position That Newegg's Mobile App Met The Questionnaire Limitations Was Reasonable

Newegg's primary argument that MacroSolve's case was exceptionally weak on the merits is that Newegg's mobile app does not present a "questionnaire" having a "series of questions" to a user as required by the asserted claims. Newegg's mobile app presents various series of statements requesting information from users. But according to Newegg, those statements requesting information do not qualify as a "questionnaire" having a "series of questions" because the statements requesting information are not in the form of interrogatives ending with question marks.

The problem with Newegg's argument is that Newegg already lost on the underlying claim construction issue during *Markman*. The district court agreed with MacroSolve that statements requesting information were sufficient to meet the claim limitations. Even if this Court believes the district court got it wrong, given that a federal judge agreed with MacroSolve's position, it is hard to understand how Newegg can possibly argue that MacroSolve's position was not only weak, but so exceptionally weak that it should be forced to pay Newegg's fees. (And it is even harder to understand how Newegg can argue on appeal that the district court abused its discretion in rejecting Newegg's argument.)

During the *Markman* process, Newegg initially argued that the claimed "questionnaire" must consist of questions (in the sense of interrogatives ending

15

with question marks), and that statements requesting information were not enough.

But that position could not be maintained in view of the specification of the patent-in-suit, which—in definitional language—made clear that the claimed "questionnaire" could include questions or statements seeking information. A1020: 8:12-19 ("data may be gathered by prompting the user via handheld 28 with ***a series of questions or statements, each of which calls for a response***. . . . For purposes of the instant disclosure, ***the series of questions/statements will collectively be referred to as a questionnaire***.") (emphasis added).

When pressed by the Court on this, Newegg conceded that the claimed "questionnaire" could include statements requesting information:

> THE COURT: . . . . [I]s there agreement on whether or not there must be questions or whether it can be a question or a statement? Is it still your position that it must be a question with a question mark?
>
> [NEWEGG'S COUNSEL]:    Well, I think that particular point may be somewhat moot in the sense that Claim 1 says creating a questionnaire comprising a series of questions, so there's already a series of questions. So I think we would be willing to accept instead—where in our definition it says "that includes questions" ***I think we would accept questions or statements requesting information*** . . . .

A1378-79: 21:22-23:10 (emphasis added). But rather than simply dropping its clearly untenable position, Newegg attempted to salvage it by presenting a new theory for the first time during the *Markman* hearing. Despite its concession, Newegg argued that statements requesting information did not count based on the

16

fact that the claims separately recited the "series of questions" making up the

questionnaire.  *See* A1379-80: 22:14-23:15.

Newegg had no explanation why the term "***question***naire" should be

interpreted to allow for statements requesting information, but the phrase "series of

***questions***" should not.  Despite the district court's skepticism, Newegg persisted in

this new argument:

> THE COURT: . . . . Going back to questions or statements, because I
> would really like to see if we can't get it nailed down, but column 8—
> I'm looking at column 8, line 12 . . . . It says for the purposes of the
> instant disclosure, the series of questions slash statements will
> collectively be referred to as a questionnaire.  ***So I'm wondering if
> there's still a dispute about whether <u>what is in</u> a questionnaire can
> be a question or statement***.

> [NEWEGG'S COUNSEL]:  Well, as I mentioned before, I-we would
> be fine with the word questionnaire being construed to be—to
> include—it has to include either questions or statements requesting
> information, or both.  ***But, again, in the claims it—the claims go a
> step further and specify that the particular questionnaire includes
> questions.***

A1382-83: 25:22-26:8 (emphasis added).

In view of the specific, new argument presented by Newegg during the

*Markman* hearing, the district court addressed the issue of "whether the 'questions'

in the questionnaire can be statements."  A1517.  The district court first noted

Newegg's concession.  A1523.  That should have been enough to resolve the issue.

But in view of Newegg's new argument, the district court went on to further rule

that "*[i]n case there is still a dispute*, the questionnaire can include either questions or statements."  *Id.*

Newegg thus lost its argument that its mobile app could only infringe if it presented "questions" in the sense of interrogatives with question marks after them, and that statements requesting information were not enough.  What possible basis then was there for Newegg to argue that MacroSolve was incorrect, let alone exceptionally incorrect, in relying on the fact that statements requesting information were enough to meet the claim limitations?

Newegg's response is that it disagrees with MacroSolve's reading of the *Markman* order.  According to Newegg, the district court ruled only that a "questionnaire's" questions can be statements seeking information.  According to Newegg, whether the "series of questions" that make up the questionnaire can be statements requesting information is a separate issue that was "not even addressed at claim construction."  A3689.

As an initial matter, it is demonstrably false that this issue was "not even addressed at claim construction."  As discussed above, Newegg's attempt to distinguish between a "questionnaire" and a "questionnaire" having a "series of questions" was explicitly argued by Newegg during the *Markman* hearing.  A1378-80: 21:23-23:15.  MacroSolve expressly responded during the hearing that the distinction Newegg was trying to draw did not make sense.  A1379-80: 22:19-23:1.

The district court even revisited the issue to clarify and nail down Newegg's position during the hearing.  A1382: 25:22-26:8.  And given Newegg's position, the district court expressly took up the issue of "whether the 'questions' in the questionnaire can be statements"—and ruled against Newegg.  A1517, A1523. Newegg's assertion that the issue simply was not addressed during claim construction is at best wishful thinking.

But put all of that aside and pretend for a moment that Newegg is correct that the district court left the issue open.  (And pretend also that MacroSolve's contrary reading of the district court's order was unreasonable, which it would have to be for Newegg's argument to work.)  How would that possibly warrant Newegg's argument below that MacroSolve's position was unreasonable?  (And, even worse for Newegg, how would that possibly warrant Newegg's current argument that it was an abuse of discretion for the district court to not reach that conclusion?)  If the underlying issue had really been left open, all that would mean is that it was undecided.  It would not mean that MacroSolve continued to press an unreasonable position that had been rejected by the district court.  Indeed, since it turned out that MacroSolve was correct that a "*question*naire" could include statements requesting information, it was certainly not outlandish for MacroSolve to take the position that the "series of *questions*" making up the "*question*naire" could also be met by a series of statements requesting information.

At best, then, Newegg's argument that the district court left the issue open might establish that there was some slender reed for Newegg to grasp in continuing to advance *its* claim construction and non-infringement position regarding "series of questions." That is, at best, it might show that Newegg should not be charged with taking an objectively baseless, exceptionally weak position. But that is, of course, a far cry from establishing that MacroSolve's position was unreasonable. There is simply nothing to support Newegg's charge that MacroSolve's position regarding the "series of questions" limitations was exceptionally weak.

The district court understood this. The district court was well aware of the history of Newegg's shifting positions on this issue from having held the *Markman* hearing, as well as from MacroSolve's briefing on the issue. In view of this history, the district court held that "Newegg has not shown that MacroSolve's infringement theories were baseless." A11.

Newegg's argument also mischaracterizes the portions of its mobile app that MacroSolve asserted met the questionnaire limitations. In its original briefing, Newegg took the position that MacroSolve was asserting that only a single screen from its mobile app presented questions. A3114-14. In opposition, MacroSolve explained that there were many other portions of Newegg's mobile application that MacroSolve asserted met the questionnaire limitations, including, for example, screens that asked the user to fill in their names, addresses, etc. A3276, A3575-76.

In reply, Newegg did not dispute that those screens would qualify as questionnaires (having series of questions).  Newegg's sole response was that those additional screens did not meet other claim limitations.  A3690.  That was a brand new argument, made by Newegg for the first time ever in a reply brief in support of a motion for attorneys fees.  *Id.*  And Newegg had absolutely nothing to support that new argument.  *Id.*  Now, on appeal, Newegg completely ignores this history, and once again simply pretends that MacroSolve identified only a single screen from its mobile app as meeting the questionnaire limitations.  Appellant's Br. at 29.  The screens from Newegg's mobile application that request that users enter information such as their name, address, etc., are clearly the type of questionnaires contemplated by the patent-in-suit, which is perhaps why Newegg has no better strategy than to pretend they do not exist.

One final issue.  Newegg did not preserve its "questionnaire" argument for appeal.  In its original motion for fees, Newegg presented its argument about MacroSolve's "series of questions" as a secondary argument.  A3120.  Then, when it moved for reconsideration of the magistrate judge's order denying its motion for fees, Newegg dropped the argument altogether, not mentioning it even in passing.  A3757-58.  Newegg thus waived any appeal it might have based on its argument concerning the "questionnaire" limitations.  Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to.").  That Newegg

21

now apparently believes that its "questionnaire" argument is its best issue on appeal obviously cannot trump its previous decision to drop that argument.

### B.    MacroSolve's Joint Direct Infringement Theory Was Reasonable

As this Court and the patent bar well know, there has recently been more than a little uncertainty about the law of joint infringement. MacroSolve took the position below that Newegg and its customers were jointly directly infringing though the use of Newegg's mobile application because they were acting in concert. Newegg took the position that it could not be held liable as a joint infringer with its customers because it does not "control or direct" them. Those were reasonable positions for the parties to take given the uncertainty in the law of joint infringement.

But Newegg's position on its fee motion regarding joint infringement was unreasonable, and its position here on appeal is even more so. Newegg says that MacroSolve's position regarding joint infringement was exceptionally weak because "[t]he law was *well settled* long before this lawsuit" that a single actor must perform all claim steps, or "control or direct" a second actor to perform such steps. Appellant's Br. at 33 (emphasis added). Newegg simply ignores that the issue of joint infringement has been in flux over the last few years. Newegg simply ignored below, and simply ignores now, that many responsible parties and advocates have argued that acting in concert is enough to establish joint

infringement. For example, Donald Dunner made the same argument on behalf of Akamai in its first *en banc* appeal. *See* A3341-46. Similarly, Eli Lilly recently advanced the same argument before this Court. A3380. These issues have been widely followed by the patent bar. Yet, to MacroSolve's knowledge, no one except Newegg has ever said that advocates arguing for the acting-in-concert standard, and against the direction-or-control standard, should be faulted for having taken an unreasonable position.

The unreasonableness of Newegg's position is demonstrated by this Court's most recent *en banc Akamai* decision, which rejected Newegg's argument that direction or control is required for joint direct infringement. *Akamai Tech., Inc. v. Limelight Networks, Inc.,* 2015 U.S. App. LEXIS 14175, at *6-7 (Fed. Cir. Aug. 13, 2015). That decision, of course, does not mean that Newegg was unreasonable for advocating below for its direction-or-control standard. But it does mean that Newegg was (and is) unreasonable in arguing that MacroSolve's case was baseless simply because MacroSolve advocated against that standard.

Newegg says that this does not matter, because no matter what the standard is for joint direct infringement, MacroSolve could not establish "inducement liability on Newegg's part . . . ." Appellant's Br. at 34. But that conflates direct and indirect infringement. MacroSolve's theory of joint infringement was a direct infringement theory, not an indirect infringement theory. If the requirements of

joint direct infringement are met, there is no need to separately establish

infringement under an inducement theory.

## C.   MacroSolve's Inducement Theory Was Reasonable

Newegg separately argues that there was no objectively reasonable basis for

MacroSolve to allege that Newegg induced its customers to perform the

"terminating" step of the asserted claims.

The problem with this argument is that Newegg abandoned the basis for it

during claim construction.  From the beginning, MacroSolve's infringement theory

has been that the terminating step is not required to be performed by any user, but

rather occurs as a result of the general nature of the wireless network connections

at issue.  During *Markman*, Newegg initially took the position that it is taking now

on appeal.  Newegg argued that the "terminating" step should be construed by the

district court as "***the user causing*** the network connection to become unavailable."

*See* A1147; A1190-91.  But in its reply *Markman* brief, Newegg abandoned its

argument that the user must cause the termination:

> [T]he only remaining dispute regarding this term is whether or not the
> ***user must cause*** the network connection to become unavailable.
> ***While Defendants maintain that the most natural reading of the***
> ***limitation in view of the specification is that the connection is***
> ***terminated by the user, in an effort to simplify the issues before the***
> ***Court, Defendants agree to MacroSolve's position that no***
> ***construction is necessary*** to the extent that MacroSolve agrees that
> the connection must be unavailable.

*See* A1283 (second emphasis added).  If Newegg really believed that

MacroSolve's position on the terminating step was unreasonable, it should have asked the district court to rule on it during *Markman*.

Newegg now says that it simply "withdrew its request that the district court expressly issue such a construction," and that it never "suggested that the claims somehow excluded end-user actions . . . ." Appellant's Br. at 34-35. But that is not true. Newegg did not abandon its position that a user must cause the termination steps simply because it decided that was not an important issue for the district court to resolve. (Although if that were the real reason, that also should be enough to demonstrate that MacroSolve's position on the merits was not exceptionally weak based on this issue.) Newegg abandoned that position because it was inconsistent with a new position that it decided to advance at the last minute. Newegg argued in its reply *Markman* brief and during the *Markman* hearing that it would not count if the connection was terminated merely in the sense of a user deciding to disconnect. Rather, Newegg argued that the connection must be "unavailable" so that user could not connect even if he wanted to. *See* A1407-10: 50:22-53:21. Under that position, an end-user simply toggling the connection on or off would not meet the claim limitations. Newegg's earlier (and current, revived) position that it ***must*** be a user that decides to disconnect was diametrically opposed to that. So Newegg abandoned the position that it must be a user that causes the termination of the network connection.

25

MacroSolve's theory was always that Newegg induced its customers to infringe by encouraging them to use Newegg's mobile app, which, in the environment that its app was used in, would inevitably result in the claimed method being performed.  That was a reasonable theory under either MacroSolve's proposed claim constructions (which did not require a user to terminate the connection) or Newegg's construction presented during *Markman* (which actually excluded a user terminating the connection).  And MacroSolve presented sufficient evidence at the expert report stage to support its theory.  MacroSolve presented evidence that (1) Newegg's mobile application is in widespread use, *see* A3641-42: ¶¶101-102 (showing more than 50 million user sessions); and (2) network connections and disconnections occur routinely during such use of mobile apps, *see* A3303-05: ¶¶ 6-8; A3580-82: §§ 7.1.6, 7.1.8; A3589-90: § 7.5.2.  This circumstantial evidence of infringement establishes that the ordinary use of Newegg's mobile application resulted in MacroSolve's patent being infringed. *See Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1364-65 (Fed. Cir. 2004) (holding that circumstantial evidence that a step of a method claim was performed was sufficient).

For the first time ever, in its appeal brief, Newegg asserts that the "odds" of network terminations occurring during a user's entry of data into the Newegg mobile application "is effectively zero and MacroSolve should have known it."

26

Appellant's Br. at 40.  But Newegg provides no support for that assertion.  And it is contradicted by MacroSolve's expert, who opined that in view of the incredibly large number of uses of Newegg's mobile application, as well in view of the well known fact that wireless networks are inherently unreliable and connect and disconnect all of the time, it was certain that the use of Newegg's mobile application resulted in infringement of MacroSolve's patent.  Newegg's assertion is also contradicted by its own arguments during *Markman*, when it explained that this is exactly what happens when mobile applications are used on today's wireless networks:

> [T]he Defendants would like to start off giving a brief overview of the '816 patent. . . . The '816 patent, among other things, attempted to deal with some of the problems that were associated with the limitations of a network connection, *so if you have ever used your smart phone to surf the internet, one of the problems that you might have encountered is the fact that your phone sometimes connects and disconnects to the network*, and that can be particularly frustrating when you're filling out an on-line survey because when the phone is disconnected from the network, it can't receive or send data. So if you've been responding to a questionnaire and you filled out the questionnaire with multiple responses, *if your cell phone actually disconnects from the network right as you're pressing send*, you'll receive an error that says network disconnected. And often times if you press back you will notice that your responses are all gone and all that time that you spent filling in the responses is lost.

A1388:89: 31:8-32:6 (emphasis added).  In response to this, even the district court acknowledged that such disconnects are a common occurrence.  *See, e.g.,* A1389: 32:7 ("THE COURT:  That's happened.").

27

Moreover, even if Newegg were correct that MacroSolve's circumstantial evidence regarding network disconnections was insufficient, that would not mean that MacroSolve's assertion of an inducement theory in this case was exceptionally weak.  Despite its conclusory assertion made for the first time on appeal, Newegg has not even tried to disprove MacroSolve's theory that direct infringement inevitably happens given the nature of the networks Newegg's mobile app is designed to work on.  Rather, Newegg's sole argument is that MacroSolve was not able to present sufficient evidence to prove it.  But the fact that MacroSolve was not able to secure the direct, rather than circumstantial, evidence of underlying direct infringement that Newegg is demanding (even if such direct evidence were required for MacroSolve to ultimately prevail) would not mean that MacroSolve's case was exceptionally weak.  All it would mean is that, for various reasons (including Newegg's intransigence during the discovery process), MacroSolve was not able to secure that evidence; not that MacroSolve's positions were baseless on the merits.

Finally, Newegg separately argued that it cannot be liable for inducing this direct infringement because, in its heart of hearts, it "does not want network communications to go down at all as this is what enables Newegg to communicate with its customers." A3119.  Of course nobody wants network connections to be unreliable. But they are. And Newegg's product is designed to continue to collect

responses from the user despite network connections going down. *See* A3672: 109:3-25. So the fact that Newegg encourages and instructs its customers to use its mobile app in circumstances in which it knows infringement will occur is enough to establish Newegg's actively induced infringement of MacroSolve's patent.

### D. MacroSolve's Contributory Infringement Theory Was Reasonable

Newegg's only argument on appeal that MacroSolve's contributory theory was unreasonable is that MacroSolve "conceded that there was never any contributory infringement." Appellant's Br. at 47. It is true that MacroSolve's expert testified that it was possible for Newegg's mobile application to be used in situations where the network connection is not terminated. But that does not change the fact that Newegg's mobile application has special features that enable it to perform the patented method, and there are no substantial non-infringing uses for those features. *See, e.g., Ricoh Company, Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008) (holding that one cannot "escape liability as a contributory infringer merely by embedding [the infringing component] in a larger product with some additional, separable feature before importing it and selling it"). Nor does it change the fact that a user cannot control whether the terminating step will be performed or not. Rather, given the nature of wireless networks, continued use of Newegg's mobile application will inevitably result in infringement of the

patent-in-suit.  Accordingly, MacroSolve's contributory infringement theory was also reasonable.

Finally, Newegg waived any argument that MacroSolve's contributory infringement theory was baseless.  Newegg did not address contributory infringement at all in its opening brief for attorneys fees.  A3118-20.  When MacroSolve pointed this out in its opposition, Newegg's response was that contributory infringement was not in the case.  A3274.  This despite the fact that MacroSolve pleaded contributory infringement (A1002: ¶8), Newegg examined MacroSolve's expert on contributory infringement (A3712-13: 128:4-130:3), and Newegg even moved for summary judgment of no contributory infringement (A2030, A2430-31).  (Newegg's argument that contributory infringement was not in the case is a good example of what it really means for an argument to be exceptionally weak.)  Moreover, when it objected to the magistrate judge's denial of its motion for fees, Newegg did not raise any issue concerning contributory infringement.  A3757-58.  It is too late for Newegg to now raise this argument. *Thomas v. Arn*, 474 U.S. 140, 155 (1985) (holding that a party's appeal of a magistrate judge's order to the district court delimits his right to further appellate review).

## III.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN REJECTING NEWEGG'S ARGUMENT THAT MACROSOLVE ACTED IN BAD FAITH

Despite the rhetoric that permeates nearly every page of its opening brief on appeal, the actual facts that Newegg relies on to argue that MacroSolve engaged in abusive litigation tactics to extort nuisance settlement are few:  (1) MacroSolve sued a large number of defendants; (2) MacroSolve settled with many of them for relatively modest amounts; and (3) MacroSolve dismissed its case against Newegg shortly before a motions hearing.

Newegg says that the district court abused its discretion in rejecting Newegg's argument that MacroSolve acted in bad faith in view of these facts because "the district court devoted only a single sentence to sweep nearly all of Newegg's evidence of bad faith aside . . . ."  Appellant's Br. at 24.  Newegg argues this was a "gross oversimplification and dearth of analysis" that did not follow *Octane Fitness's* directive to analyze the totality of the circumstances.  *Id.*

In reality, it was Newegg's argument that MacroSolve acted in bad faith that was supported by a "dearth of analysis."  Newegg's argument was based on very few facts.  Contrary to Newegg's argument, the district court did not "sweep . . . aside" these facts in a single sentence.  Rather, the district court considered each of them, considered both Newegg and MacroSolve's positions on them, and ultimately credited MacroSolve's explanations rather than Newegg's.  The

problem for Newegg is that the few facts it advanced were not nearly enough to

support its charge that MacroSolve acted in bad faith. *See SFA Sys., LLC v.*

*Newegg, Inc.,* 2015 U.S. App. LEXIS 11892, at *12 (Fed. Cir. July 10, 2015)

(holding that Newegg did not establish any improper motivation merely by

advancing very similar facts).

For example, the district court specifically considered Newegg's argument

that the filing of a large number of actions against a large number of defendants,

and relatively modest settlements against many of them, showed that MacroSolve

was acting in bad faith. The district court first fairly summarized Newegg's

argument. A9 ("[Newegg] asserts that MacroSolve employed abusive litigation

strategy and filed this action 'for purpose of extorting a nuisance value settlement'

by filing numerous lawsuits against a variety of defendants and settling early for

much less than the cost of litigation."). The district then noted that MacroSolve

offered innocent explanations for its litigation and settlement strategy. A10

("MacroSolve responds that its own limited financial resources forced it to settle

against other defendants."). (If anything, the district court shortchanged

MacroSolve by not noting other reasons for its litigation and settlement strategy—

for example, the widespread, one-off nature of the infringement of its patent.) The

district court then concluded that "even under the new, lower standard for an

exceptional case designation, Newegg provides little evidence" that this case was

exceptional.  The district court concluded "[t]hat MacroSolve asserted the patent against a wide variety of defendants and settled many of those cases for significantly less than litigation costs does not alone show bad faith."  A11.

Similarly, the district court specifically considered, and rejected for good reason, Newegg's argument that the timing of MacroSolve's dismissal showed bad faith.  The district court fairly summarized Newegg's argument.  *See* A9 ("Further, Newegg argues that the timing of Macrosolve's dismissal—just before the summary judgment hearing and one day before dismissing the rest of its cases—confirms that MacroSolve's litigation scheme was improper.").  The district court then noted that MacroSolve had explained that the timing of the dismissal was based on an adverse action in the Patent Office.  *See* A10 ("Macrosolve points out that a few days before it dismissed its case against Newegg, the Patent Office issued a final office action that rejected all the claims of the '816 patent. . . . Knowing that the asserted patent would soon be cancelled because of its inability to finance reexamination, Macrosolve dismissed this case and all other pending cases asserting the '816 patent.")  The district court then rejected Newegg's argument, concluding that "the PTO's final office action that rejected all claims of the '816 patent just days before provides a reasonable explanation for the timing of the dismissal."  A11.

On appeal, Newegg argues that MacroSolve's explanations for why it

dismissed its case are pretextual.  *See* Brief at 23, 50-51.  Newegg says this is

shown because (1) MacroSolve filed additional lawsuits after the reexamination

was instituted and filing more lawsuits is not the type of action taken by a litigant

having severe financial constraints; (2) MacroSolve could have sought a stay of the

litigation pending an appeal of the reexamination; and (3) MacroSolve could have

moved to dismiss Newegg without prejudice in view of the Patent Office action.

*See id.*

    As an initial matter, Newegg did not make these arguments below.  Rather,

Newegg simply ignored what happened in the Patent Office.  In its original brief

below, Newegg did not even mention the final rejection issued by the Patent

Office.  A3110-24.  Then, when it appealed the magistrate judge's denial of its

motion to the district court, Newegg simply ignored that the magistrate judge had

specifically concluded that the timing of the final rejection was a sufficient

explanation for the dismissal of the case against Newegg.  A3755-58.  Only now

on appeal has Newegg presented several pages of argument about why

MacroSolve's explanations were supposedly pretextual.

    In any event, Newegg's new arguments are not good.  The fact that

MacroSolve filed additional lawsuits after the reexamination ***was instituted*** does

not mean that MacroSolve did not decide to dismiss all of its cases as a result of

the ***final rejection*** that the Patent Office issued during the reexamination.  Nor

does the fact that lawsuits were filed show that MacroSolve was not having

financial difficulties since MacroSolve had a separate source of litigation funding.

Similarly, MacroSolve could have sought a stay, but what would have been the

point of that? Since MacroSolve knew that it was not going to continue to fight the

reexamination, it was inevitable that MacroSolve's patent was going to be

invalidated. There would thus no reason to continue the litigation, even if stayed.

Finally, the idea that MacroSolve could have simply had the case dismissed

without prejudice is pure fantasy. There is no way that Newegg would have agreed

to that. Before agreeing to the motion to dismiss filed by MacroSolve, Newegg

demanded (1) that MacroSolve's dismissal be with prejudice; (2) that MacroSolve

extend a covenant not to sue Newegg; and (3) that MacroSolve agree that the

dismissal would not preclude Newegg from seeking fees. MacroSolve could have

filed an opposed motion to dismiss without prejudice, but that would not have

resulted in anything different happening. MacroSolve's patent would still be

invalidated by the Patent Office and the parties would still have had (and be

having) the exact same dispute over fees.

## IV.    THE DISTRICT COURT DID NOT ERR IN REJECTING NEWEGG'S REQUEST THAT IT INVOKE ITS INHERENT POWERS TO SANCTION MACROSOLVE

Since the district court was well within its discretion in determining that this

case was not exceptional, it was also well within its discretion in rejecting

Newegg's request that it invoke its inherent powers to sanction MacroSolve.  But even if this case had been exceptional, the district court's decision to not invoke its inherent powers to sanction MacroSolve would have been justified.  That is because the bar for sanctioning a party under a court's inherent powers is much higher than the bar for finding a case exceptional.  *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921 (Fed. Cir. 2012) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)).  Accordingly, this Court should affirm the district court's denial of Newegg's motion for sanctions under the district court's inherent powers.

Moreover, Newegg's appeal on this point should be denied because Newegg waived it.  Although it moved for a sanction under the district court's inherent powers in its original motion, it waived that motion by not appealing the magistrate judge's denial of that motion to the district court.   *See* Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to.").  Moreover, on appeal, Newegg has not even attempted to address the relevant standards for sanctions under a court's inherent powers.  Newegg has thus also waived this issue on appeal by failing to sufficiently develop it. *CardSoft (Assignment for the Benefit of Creditors), LLC v. VeriFone, Inc.*, 769 F.3d 1114, 1119 (Fed. Cir. 2014) ("Arguments that are not appropriately developed in a party's briefing may be deemed waived") (citing *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) ("Failure adequately to brief an issue

on appeal constitutes waiver of that argument.").

## CONCLUSION

Newegg's motion for fees was, and this appeal of its denial is, without merit.
Newegg filed its motion and this appeal only to further its policy of imposing as
much pain on patent plaintiffs as possible.  Newegg's conduct should not be
condoned by this Court.  This Court should affirm the district court's denial of
Newegg's motion.

Dated:  August 19, 2015                 Respectfully submitted,

                                        */s/ Matthew J. Antonelli*
                                        Matthew J. Antonelli
                                        Texas Bar No. 24068432
                                        matt@ahtlawfirm.com
                                        Zachariah S. Harrington
                                        Texas Bar No. 24057886
                                        zac@ahtlawfirm.com
                                        Larry D. Thompson, Jr.
                                        Texas Bar No. 24051428
                                        larry@ahtlawfirm.com
                                        Califf T. Cooper
                                        Texas Bar No. 24055345
                                        ANTONELLI, HARRINGTON &
                                        THOMPSON LLP
                                        4306 Yoakum Blvd., Ste. 450
                                        Houston, TX 77006
                                        (713) 581-3000

                                        *Counsel for Appellee MacroSolve, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 19th day of August 2015, the foregoing Brief of

Plaintiff-Appellee was served on counsel for Defendant-Appellant Newegg, Inc.

via the Court's ECF system and via electronic mail upon the following:

Daniel Brean                          Mark Lemley
Kent Baldauf, Jr.                     Durie Tangri LLP
Bryan Clark                           217 Leidesdorff Street
Christian Ehret                       San Francisco, CA 94111
The Webb Law Firm                     Telephone: (415) 362-6666
One Gateway Center                    mlemley@durietangri.com
420 Fort Duquesne Blvd.
Suite 1200                            Richard Frenkel
Pittsburgh, PA 15222                  Latham & Watkins LLP
Telephone: (412) 471-8815             140 Scott Drive
dbrean@webblaw.com                    Menlo Park, CA 94025
kbauldafjr@webblaw.com                Telephone: (650) 463-3080
bclark@webblaw.com                    rick.frenkel@lw.com
cehret@webblaw.com


Dated: August 19, 2015          */s/ Matthew J. Antonelli*
                                Matthew J. Antonelli
                                *Counsel for Appellee MacroSolve, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that the body of this brief, beginning with the Preliminary Statement on page 1, and ending with the last line of the Conclusion on page 37, including headings, footnotes, and quotations, is presented in Times New Roman 14-point font and contains 8,478 words, in compliance with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i).

<u>/s/ Matthew J. Antonelli</u>
Matthew J. Antonelli
*Counsel for Appellee MacroSolve, Inc.*