2015-1642

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

MACROSOLVE, INC.,

Plaintiff-Appellee,

v.

GOVERNMENT EMPLOYEES INS. CO.,

Defendant,

&

NEWEGG INC.,

Defendant-Appellant.

Appeal from the United States District Court for the Eastern District of Texas
in Case No. 6:11-cv-00287, Judge Michael H. Schneider

## REPLY BRIEF OF APPELLANT NEWEGG INC.

Mark. A. Lemley
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 362-6666

Richard G. Frenkel
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 463-3080

Kent. E. Baldauf, Jr.
Daniel H. Brean
Bryan P. Clark
Christian D. Ehret
THE WEBB LAW FIRM
One Gateway Center
420 Fort Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 471-8815

*Counsel for Newegg Inc.*

September 8, 2015

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

MacroSolve v. Government Employees Ins., 2015-1642

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Newegg Inc. hereby certifies the following:

1.    The full name of every party or amicus represented by me is:

   Newegg Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   Not applicable.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   No publicly held company owns ten percent or more stock in Newegg Inc.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   Kent E. Baldauf, Jr., The Webb Law Firm
   James J. Bosco, Jr., The Webb Law Firm
   Daniel H. Brean, The Webb Law Firm
   Anthony W. Brooks, The Webb Law Firm
   Bryan P. Clark, The Webb Law Firm
   Christian D. Ehret, The Webb Law Firm
   Herbert A Yarbrough, III, Yarbrough & Wilcox, PLLC
   Debra Elaine Gunter, Findlay Craft, PC
   Mark A. Lemley, Durie Tangri LLP
   Richard G. Frenkel, Latham & Watkins LLP

Dated:  September 8, 2015          /s/ *Daniel H. Brean*
                                   Daniel H. Brean
                                   *Counsel for Newegg Inc.*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST .......................................................................... i

TABLE OF CONTENTS ................................................................................. ii

TABLE OF AUTHORITIES ............................................................................ iii

ARGUMENT ..................................................................................................1

    I.  MACROSOLVE'S MERITS POSITIONS WERE FRIVOLOUS ...................................3

        A.  MacroSolve Could Not Have Proven that Newegg's Accused App Contained a "Questionnaire" With a "Series of Questions"....................4

        B.  MacroSolve Could Not Have Proven Indirect or Joint Direct Infringement by Newegg...........................................................................8

             1.  *Active Inducement* ...................................................................8

             2.  *Contributory Infringement* .................................................12

             3.  *Joint Direct Infringement* ....................................................14

    II.  MACROSOLVE FAILS TO EXPLAIN AWAY ITS BAD-FAITH MOTIVATION FOR SUING NEWEGG ..............................................................................15

    III. NEWEGG IS A PRINCIPLED AND RESPONSIBLE CORPORATE CITIZEN, NOT AN UNREASONABLE LITIGANT ...........................................................18

    IV. NEWEGG DID NOT ACT UNREASONABLY IN DEFENDING THIS LAWSUIT ........25

    V.  NEWEGG DID NOT WAIVE THE ARGUMENTS IDENTIFIED BY MACROSOLVE ..28

CONCLUSION.................................................................................................31

CERTIFICATE OF SERVICE .........................................................................33

CERTIFICATE OF COMPLIANCE ................................................................34

# TABLE OF AUTHORITIES

## *CASES*

*21 SRL v. Newegg Inc.*,
　No. 2:09-cv-06590 (N.D. Il. Oct. 20, 2009) ......................................................20

*ACCO Brands, Inc. v. ABA Locks Mfr. Co., Ltd.*,
　501 F.3d 1307 (Fed. Cir. 2007) ......................................................................9

*AdjustaCam, LLC v. Newegg Inc.*,
　Appeal No. 13-1665 (Fed. Cir. 2013) ...............................................................24

*Advanced Display Systems, Inc. v. Kent State Univ.*,
　212 F.3d 1272 (Fed. Cir. 2000) .....................................................................26

*Akamai Techs., Inc. v. Limelight Networks, Inc.*, Nos. 09-1372, -1380, -1416 and -1417,
　2015 U.S. App. LEXIS 14175 (Fed. Cir. Aug. 13, 2015) ....................................14

*Alcatel-Lucent USA, Inc. v. Newegg Inc.*,
　505 Fed. Appx. 957 (Fed. Cir. 2013) ......................................................... 19, 22

*Becton Dickinson and Co. v. C.R. Bard, Inc.*,
　922 F.2d 792 (Fed. Cir. 1990) .......................................................................29

*Commil USA, LLC v. Cisco Systems*,
　135 S. Ct. 1920 (2015) ........................................................................... 1, 21

*Data Carriers, LLC v. Newegg Inc.*,
　No. 1:12-cv-00942-LPS (D. Del. July 19, 2012) ...............................................20

*Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*,
　758 F.3d 1344 (Fed. Cir. 2014) ................................................................ 20, 22

*Douglass v. United Servs. Auto. Ass'n*,
　79 F.3d 1415 (5th Cir. 1996) .........................................................................30

*Eon-Net LP v. Flagstar Bancorp*,
　653 F.3d 1314 (Fed. Cir. 2011) ......................................................................23

*E-Pass Technologies, Inc. v. 3Com Corp.*,
    473 F.3d 1213 (Fed. Cir. 2007) ............................................................10

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010) ..............................................................30

*Kelora Systems LLC v. Newegg Inc.*,
    500 Fed. Appx. 953 (Fed. Cir. 2013) .......................................... 20, 22

*Kelora Systems LLC v. Newegg Inc.*, No. 4:11-cv-1548,
    2012 U.S. Dist. LEXIS 70636 (N.D. Cal. May 21, 2012) ..................20

*Kilopass Tech., Inc. v. Sidense Corp.*,
    738 F.3d 1302 (Fed. Cir. 2013) .................................................. 16, 18

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    134 S. Ct. 2111 (2014) ...........................................................................8

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*,
    370 F.3d 1354 (Fed. Cir. 2004) ............................................................10

*Mirror Worlds, LLC v. Apple, Inc.*,
    692 F.3d 1351 (Fed. Cir. 2012) ............................................................10

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014) ................................................................... 3, 27

*Pragmatus Telecom LLC v. Newegg Inc.*, No. 2014-1777,
    2015 U.S. App. LEXIS 13624 (Fed. Cir. July 31, 2015) ....................24

*SFA Systems, LLC v. Newegg Inc.*,
    793 F.3d 1344 (Fed. Cir. 2015) ...................................... 3, 15, 16, 24

*Soverain Software, LLC v. Newegg Inc.*,
    705 F.3d 1333 (Fed. Cir. 2013) .................................................. 19, 22

*Speedtrack, Inc. v. Newegg Inc.*,
    No. 4:07-cv-03602-PJH (N.D. Cal. July 12, 2007)............................20

*Stambler v. Newegg Inc.*,
    No. 2:09-cv-00310-JRG (E.D. Tex. Oct. 7, 2009)..............................20

*Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*,
   785 F.3d 625 (Fed. Cir. 2015) ........................................................ 10, 11

*TQP Development, LLC v. Newegg Inc.*,
   No. 2:11-cv-248-JRG (E.D. Tex. July 15, 2015) .................................22

*United States ex rel. Steury v. Cardinal Health Inc.*,
   735 F.3d 202 (5th Cir. 2013) .............................................................30

## *STATUTES*

35 U.S.C. § 271(c) ...................................................................................13

35 U.S.C. § 285 ..................................................................... 1, 15, 21, 24

## *RULES*

Federal Rule of Civil Procedure 26(a)(2) ...............................................13

Federal Rule of Civil Procedure 72 .................................................. 30, 31

Federal Rule of Civil Procedure 72(a) ....................................................29

Federal Rule of Civil Procedure 72(b) ....................................................29

# **ARGUMENT**

Newegg is a principled company that has taken a stand against abusive patent lawsuits seeking nuisance settlements regardless of the merits. MacroSolve is among a special class of abusive litigants that will press on with dozens of meritless cases as long as the settlement money keeps coming, but will abandon the cases outright at the first sign of a determined defendant that can and will prove the plaintiff wrong in court. When such plaintiffs unilaterally prevent the cases from reaching judgment on the merits, the litigation abuse will never be exposed— let alone remedied and deterred—unless Section 285 is applied correctly to serve its intended "safeguard" purpose. *Commil USA, LLC v. Cisco Systems*, 135 S. Ct. 1920, 1930 (2015) (criticizing litigants that "use patents as a sword to go after defendants for money, even when their claims are frivolous," and "stress[ing] that district courts have the authority and responsibility to ensure frivolous cases are dissuaded" via § 285).

MacroSolve tries to play the victim and attempts to demonize Newegg as an unreasonable litigant to distract from MacroSolve's own frivolous claims and bad-faith motivation. But Newegg's determination to seek fees at the conclusion of MacroSolve's predatory campaign is commendable, and none of MacroSolve's efforts to paint Newegg as an unreasonable defendant are credible or supported by the record. By contrast, as demonstrated in Newegg's opening brief and further

below, MacroSolve's explanations for its behavior do not hold up under the lightest scrutiny.

MacroSolve also plays fast and loose with the record on the merits. For example, to supposedly offset the frivolity of accusing a list of product categories as a "questionnaire," MacroSolve points to an entirely different name/address form in Newegg's app as being the accused questionnaire. MacroSolve Br. at 20-21. MacroSolve omits the dispositive fact that the claims require a *single questionnaire* (i.e., "said questionnaire") to satisfy all the steps. Pointing to two facially different questionnaires alone dooms MacroSolve's entire infringement case.

MacroSolve nonetheless suggests that it had other reasonable theories of joint and indirect infringement. Yet after two years of discovery MacroSolve was unable to adduce any supporting evidence for those theories or any expert disclosures sufficient to make those theories part of the case. Consistent with the fact that most of MacroSolve's infringement positions were last-minute, desperate attempts to survive summary judgment on attorney argument alone, MacroSolve's brief is full of factual assertions with no support. After completely failing to make a record of infringement, MacroSolve understandably abandoned its case.

Finally, MacroSolve makes no effort to defend the district court's utter failure to analyze the merits-related arguments in Newegg's fee motion. The district court's orders omit any discussion of "the substantive strength of

[MacroSolve's] litigating position," and thus fail to conduct the "totality of the circumstances" analysis required by *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).  *See* A0004-05, A0009-12.  At a minimum, this requires a remand for the district court to perform the correct legal analysis.  Newegg Br. at 59-63; *see SFA Systems, LLC v. Newegg Inc.*, 793 F.3d 1344, 1349 (Fed. Cir. 2015) (suggesting that *Octane Fitness* would not have been correctly applied if "the court gave Newegg's arguments scant attention").

## I.   MACROSOLVE'S MERITS POSITIONS WERE FRIVOLOUS

MacroSolve's infringement contentions faced two insurmountable hurdles, both of which independently prove this case was frivolous.  First, regardless of who MacroSolve identified as the alleged direct infringer, Newegg's app lacks a "questionnaire" having a "series of questions" required by the claims.  This fact is dispositive of all MacroSolve's infringement allegations.  Second, the indirect infringement and joint direct infringement arguments could not possibly have succeeded absent evidence that all the method steps were performed by somebody, and that Newegg either directed or controlled that process or actively induced it.  MacroSolve's bare proclamation that infringement by an unspecified third party is "inevitable" is legally incapable of carrying MacroSolve's burden of proof.

MacroSolve not only failed to overcome these basic legal hurdles to proving infringement, it barely tried.  MacroSolve's brief is full of arguments that lack

record support because they were, at best, undeveloped in the district court proceedings and are, at worst, misrepresentations of MacroSolve's case. MacroSolve could not possibly have proven infringement on this record, and it would be an abuse of discretion to reach a contrary conclusion. The judgment should be reversed accordingly.

### A.     MacroSolve Could Not Have Proven that Newegg's Accused App Contained a "Questionnaire" With a "Series of Questions"

MacroSolve accused the following screen shot in Newegg's app as being a "questionnaire" containing a "series of questions" under the claims:



A3209-11; Newegg Br. at 28-32. But this is nothing more than a list of product categories—e.g., "Computer Hardware" and "Ultrabooks"—that plainly are not a

"series of questions" under the claim language. Nor are they even "statement[s], which call[] for a response," such as "a blank field with a label like 'Name:'" under the district court's construction for "questionnaire." A1523-24.

MacroSolve's claim construction argument is a red herring. Newegg did not "abandon" or "lose" any of these arguments during claim construction. MacroSolve Br. at 15-17. As explained in Newegg's opening brief, whether the term "questionnaire" standing alone would exclude statements was essentially "moot" because the separate "series of questions" claim language removes any doubt as to what kind of "questionnaire" is encompassed by asserted claims—it is one with questions, not statements. A3291-93; A1382-83.[1] But even if MacroSolve is correct and the claimed "questionnaire" having a "series of questions" does not require "questions with a question mark" and can include "statements" (MacroSolve Br., at 15), again, only statements that "call for a response" are within the district court's claim construction. A1523-24 (citing, e.g., "a blank field with a label like 'Name:'"). The mere listing of categories that MacroSolve accused does not meet this construction. Infringement issues are

---

[1] The differences between unasserted claim 8 (reciting a "questionnaire" only) and asserted claim 1 (further limiting the questionnaire to a "series of questions") are instructive. A1382-83; A2018-19. Against this backdrop, the district court only construed the term "questionnaire" alone, implicitly adopting Newegg's view of the claim language and recognizing that there was no apparent dispute between the parties about what "series of questions" meant. *See* A1517-24.

rarely this black and white and easy to understand.    It was frivolous for MacroSolve to pursue Newegg for infringement.

MacroSolve also suggests that it accused other portions of Newegg's app as meeting the "questionnaire"/"series of questions" requirements, but all MacroSolve has done is call attention to its sleight of hand.    MacroSolve Br. at 20.    The name/address form that MacroSolve now identifies, although it was included in MacroSolve's expert's report, was never identified as the accused "questionnaire" in a way that satisfies the claims.    MacroSolve Br. at 20 (citing A3276, A3575-76). MacroSolve's expert was vague and inconsistent about which questionnaire was alleged to meet the claim requirements because the claims expressly require the ***same questionnaire*** to satisfy all the claim steps, and no single "questionnaire" he identified could meet all the requirements under even his own broad reading of the claims.    '816 Patent, at Claim 1 (reciting steps of "creating a questionnaire" and "tokenizing ***said*** questionnaire"); Newegg Br. at 40 n.3.

More specifically, in an effort to gloss over the single-questionnaire requirement of the claims, MacroSolve's expert presented a screen shot of a name/address form as the accused questionnaire that is "creat[ed]" according to the claims, but then pointed to a different questionnaire—the list of product categories—to show that "said questionnaire," once created, is also "tokeniz[ed]." A3575-79.    This inconsistency is irreconcilable and by itself shows the frivolity of

6

MacroSolve's case.  As frivolous as it is for MacroSolve to contend that a list of categories (below left) is a "questionnaire," it is at least as frivolous for MacroSolve to contend that the two screen shots below are one and the same "questionnaire":

 

A3575-79.  Such allegations cannot be made with a straight face.  MacroSolve's expert even admitted during his deposition that he pointed to two different questionnaires, and that he had nothing in his report showing that the "created" name/address questionnaire (above right) was "tokenized."  A5009-11 ("Q. [N]ow we're talking about a different questionnaire, correct?  We're talking about the questionnaire at Figure 4, correct?  A. Correct.  Q. And you don't show in your report that the questionnaire of limitation A, which is Figure 2, is tokenized,

correct, that's not in your report?   A. …   I believe that's correct."); *see also* A2273-82 (Newegg's expert report, explaining additional technical reasons why MacroSolve's accused questionnaire fails to meet the claims' tokenization requirement).

This issue is fully dispositive of MacroSolve's case, as it precludes any possible direct or indirect infringement.  *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014).  That MacroSolve was going to be forced to defend its absurd positions on the accused "questionnaire" at the impending summary judgment hearing shows why MacroSolve was so motivated to abruptly dismiss Newegg with prejudice.

## B.    MacroSolve Could Not Have Proven Indirect or Joint Direct Infringement by Newegg

MacroSolve's infringement claims were frivolous for another, independent reason.  Regardless of the meaning of the term "questionnaire," MacroSolve could never identify a direct infringer or articulate a theory under which Newegg could have induced or contributed to infringement by that hypothetical infringer.

### 1.    *Active Inducement*

MacroSolve states that its "theory was always that Newegg induced its customers to infringe by encouraging them to use Newegg's mobile app, which, in the environment that its app was used in, would inevitably result in the claimed method being performed."  MacroSolve Br. at 26.  But this conclusion, pointing

8

only to Newegg's app being "in wide use" and alleging that "routine" network disruptions might occur, does not even come close to making a *prima facie* case of active inducement of these highly context-specific method claims. Newegg Br. at 37-47 (explaining why "[t]he odds … [are] effectively zero" that the patented method was ever—even under MacroSolve's theory—performed by any of Newegg's customers).[2] The best MacroSolve could come up with was an illogical theory that a user would, in the middle of updating his or her address, toggle the phone into airplane mode or walk into a basement and out of range of a wireless network. A2137. But such "[h]ypothetical instances of direct infringement are insufficient to establish vicarious liability or indirect infringement." *ACCO Brands, Inc. v. ABA Locks Mfr. Co., Ltd.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007).

The fact that MacroSolve was unable, after two years of discovery, to identify a shred of evidence showing that the claimed method was ever performed by an end-user belies its bare assertion that the method would "inevitably" be performed. The claims require far more than mere network disconnections and connections while an app is in use. Newegg Br. at 39-40. If infringement was so certain, "[MacroSolve] should have had no difficulty in meeting its burden of proof and in introducing testimony of even one such user." *E-Pass Technologies, Inc. v.*

---

[2] Contrary to MacroSolve's contention, Newegg did raise this argument to the district court. *See, e.g.,* A3114 (noting that the infringement accusations involve "a series of unnecessary and seemingly random acts"); A2022-26; A3118-19.

*3Com Corp.*, 473 F.3d 1213, 1222-23 (Fed. Cir. 2007) (affirming summary judgment of noninfringement). Yet MacroSolve' own expert only went so far as to say that performance of the method was "possible" or "may" happen.  A2136, A2138-39.   This is a far cry from *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, the sole case relied on by MacroSolve to support its circumstantial inducement theory, where the record showed, *inter alia*, that "it would be malpractice for a doctor" not to perform the method step in question, making performance of that step a truly necessary occurrence.  370 F.3d 1354, 1364 (Fed. Cir. 2004).

In the event that some consumer somewhere decided to cut off his or her WiFi access in the middle of inputting address information, MacroSolve's inducement theory would still fail because MacroSolve's expert admitted that he had no evidence of Newegg instructing its customers to perform such actions. A2074-75 ("Q. Does Newegg, for example, instruct its customers to terminate a network connection?  A. Not to my knowledge.").  The level of proof required for instructions to establish active inducement is quite high, and MacroSolve falls far short.  *See Mirror Worlds, LLC v. Apple, Inc.*, 692 F.3d 1351, 1360-61 (Fed. Cir. 2012) (requisite instructions need to "show that all of the steps were performed together"); *Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015) (instructions must "encourage" infringement, not merely

describe the infringing method). Nor should MacroSolve have reasonably expected to find sufficient evidence, as there is no common-sense reason that Newegg would desire—let alone instruct—its customers to disconnect from Newegg's servers.

Even generously assuming (although there is no evidence of this) that Newegg knew providing its app into wide usage, combined with inherent network disruptions, might possibly cause some consumer somewhere to perform the method steps, "it is well-established that 'mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven.'" *Takeda*, 785 F.3d at 631. But there is no evidence of such network disruptions occurring in the precise manner required by the claims, let alone that Newegg's actions encouraged such disruptions. The attorney-argument statements made during the *Markman* hearing (MacroSolve Br. at 27 (citing A1388-89)), which gave "an overview of the '816 Patent," not the accused systems, hardly constitute evidence of such occurrences with Newegg's app.

As to MacroSolve's assertion that Newegg "abandoned the basis for" the foregoing arguments, MacroSolve again distorts the record. Newegg sought to construe the "terminating" step as requiring action by the end user of the app, and later withdrew its request. But the point was not to abandon Newegg's defenses.

Rather, Newegg's proposed construction was unnecessary because whoever might be alleged to have terminated the network connection, it was not Newegg. A1238; Newegg Br. at 34-36. MacroSolve later expressly accused Newegg's customers and/or the network providers of performing the "terminating" step (A2136-37, A3272) but neither actor is Newegg, and Newegg did not instruct, direct, or encourage either of them to terminate network access at any time. That suffices to avoid active inducement liability.

Finally, while MacroSolve contends that Newegg's app is "designed to continue to collect responses from the user despite the network connections going down," the citation offered to support this assertion says no such thing. MacroSolve Br. at 28-29 (citing A3672). The cited deposition testimony states only that Newegg's app works essentially the same on both WiFi and cellular networks, with only the network speed being different, and includes no discussion of "collect[ing] responses from the user" in light of network disruptions, let alone doing so in the very precise context of the claim steps. A3671-72; Newegg Br. at 39-40 (describing method steps in detail). On these facts, MacroSolve could never have prevailed in proving active inducement.

## 2.    *Contributory Infringement*

MacroSolve admits that Newegg's app can be used in a substantial non-infringing manner (MacroSolve Br. at 29), which dooms its subsequent effort to

convince this Court that Newegg's app was "knowing[ly]" and "especially made or especially adapted for use in an infringement" of MacroSolve's patent. 35 U.S.C. § 271(c). Nonetheless, MacroSolve argues that Newegg's mobile app "has special features that enable it to perform the patented method, and there are no substantial non-infringing uses for those features." MacroSolve Br. at 29. This argument has no supporting record citations, and MacroSolve does not even identify the alleged "special features" in the app.

Contributory infringement, although pleaded by MacroSolve, was never a serious theory that MacroSolve pursued in discovery. A3689; A3088-90. MacroSolve's expert report never even mentioned contributory infringement, cited § 271(c), or purported to conduct any relevant analysis other than including the single conclusory sentence: "I am not aware of any other substantial use other than infringing the asserted claims." A2149-50. Considerably more reasoning and factual explanation is required from experts to allow such opinions to be presented at trial. Fed. R. Civ. P. 26(a)(2). In any event, to the extent any relevant discovery was taken, the unrebutted evidence shows that the features MacroSolve accused (including any unspecified "special features") would work just as well with or without the alleged network switching. *See* A2512 (Newegg witness stating that the app does not "behave any differently" after a user's connection switches from a

WiFi to cellular connection). These facts does not even come close to establishing *prima facie* contributory infringement.

### 3.    *Joint Direct Infringement*

MacroSolve concedes that it was, at best, advancing a joint-tortfeasor "acting in concert" theory that was not supported by then-existing law, and is not now supported by this Court's recent en banc decision in *Akamai Techs., Inc. v. Limelight Networks, Inc.*, Nos. 09-1372, 09-1380, 09-1416 and 09-1417, 2015 U.S. App. LEXIS 14175, at *4-7 (Fed. Cir. Aug. 13, 2015) (maintaining the "control or direction" standard, but allowing for alternative "joint enterprise" theories). But even to conclude that MacroSolve advanced an "acting in concert" theory gives MacroSolve more credit than it deserves. While attempting to survive summary judgment, MacroSolve proclaimed "there is no dispute that Geico and Newegg are acting in concert with their customers to perform each step of the claimed method," but cited exactly nothing in support of this assertion by way of facts or law. A2429-30. MacroSolve did not even bother to articulate what the standard for "acting in concert" was. *Id.* The closest MacroSolve's expert ever came to expressing a joint infringement theory was his mere belief that sometimes "Newegg performs claim 1's steps (a), (b), and (d) and Newegg's customers perform the remainder of the steps." A2149-50. This does not make a *prima facie* case of joint infringement under any theory ever recognized by this Court.

14

MacroSolve's expert even admitted that MacroSolve has no proof of any direction or control by Newegg for at least the accused "terminating" and "establishing" steps.  A2074-75.

## II.   MACROSOLVE FAILS TO EXPLAIN AWAY ITS BAD-FAITH MOTIVATION FOR SUING NEWEGG

Newegg does not contend that bad faith must be inferred "*solely* from the fact that MacroSolve sued a large number of defendants, that MacroSolve settled against many of them for relatively modest amounts, and that MacroSolve dropped its case against Newegg before a motions hearing."  MacroSolve Br. at 2 (emphasis in original).  Newegg's position is that the totality of the circumstances, including those facts but also the frivolous infringement claims made by MacroSolve, support only one conclusion: that MacroSolve brought and prosecuted this lawsuit in bad faith to obtain nuisance-value settlements.

In *SFA Systems*, this Court held that "a pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285." 793 F.3d at 1350.  That pattern perfectly describes MacroSolve's business model.

MacroSolve does not deny that all of its settlements have been for nuisance value, averaging around $75,000.   Newegg Br. at 49 (detailing MacroSolve's settlement history, citing A1593-94); MacroSolve Br. at 10.  While the licenses in

*SFA Systems* may not have all been deemed nuisance value, the same cannot be said here. 793 F.3d at 1351 (noting that the record included "larger settlements imply[ing] that SFA does not always seek nuisance value settlements"). MacroSolve's brief is nonetheless full of allegations that it had to file many lawsuits and accept small sums because of "the widespread, one-off nature of the infringement of its patent." MacroSolve Br. at 10, 32 (claiming it was "necessary for MacroSolve to file suit against a large number of corporations"). MacroSolve makes no effort to substantiate these factual assertions or legitimize the nuisance value paid under its several dozen licenses with any cited evidence. *Id.*; A1593-94. Such proof of good faith, if it existed, would have been "easy to provide." *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1308, 1311 (Fed. Cir. 2013). The fact that the vast majority of MacroSolve's nuisance-value licenses were executed before any significant discovery was taken, and some even before a scheduling order was entered, indicates that the payments were made simply to avoid the cost of litigation. A3112. Indeed, MacroSolve tried to intimidate Newegg into settling for nuisance value based on the high cost of defense. A3699 (MacroSolve telling Newegg that "this case is about to get expensive" and "[y]ou are aware of the average settlement and we would hope for a counter offer at least near that number"). And while MacroSolve suggests that it wanted to dismiss Newegg because of MacroSolve's comparatively low damages calculation for

16

Newegg ($300,000), the fact is that MacroSolve had no trouble walking away from its case against Geico despite seeking $13 million in damages from Geico. MacroSolve Br. at 7, 10; A3094-95.

MacroSolve claims that it dropped the suit because it had received a rejection in reexamination and decided to abandon the patent. Even if MacroSolve was genuinely motivated to dismiss the case for these reasons alone,[3] that does not excuse MacroSolve from bringing frivolous *infringement* claims and pressing them for two years. Newegg does not seek fees on the ground that MacroSolve asserted an invalid patent, though the USPTO found that MacroSolve did and MacroSolve did not disagree. Newegg seeks fees on the ground that MacroSolve asserted frivolous infringement theories in an effort to coerce nuisance-value settlements without regard to the merits. The fact that MacroSolve's noninfringed patent is *also* invalid cannot possibly immunize MacroSolve from fee shifting simply because MacroSolve dismissed the case after the initial invalidity finding.

MacroSolve's plea that its "limited financial resources" justified its decision to dismiss Newegg is also contradicted by the record. MacroSolve had collected $4.6 million in settlement fees (A2412), it opposed efforts to stay the litigation while the reexamination proceeded (A0077), and it initiated 11 new lawsuits well

---

[3] *But see* Newegg Br. at 50-52. Contrary to MacroSolve's assertion, Newegg did argue in the district court that MacroSolve's reasons for the dismissal were pretextual and were primarily to avoid the imminent summary judgment hearing. A3690-91.

after the reexamination was pending.  Newegg Br. at 7, 50.  These actions are not consistent with a litigant in dire financial straits, forced to pick its battles very selectively.  They are consistent with a business model of bringing lawsuits expecting quick, nuisance-value settlements.

As this is the best effort MacroSolve can muster, the district court abused its discretion by crediting MacroSolve's bare attorney arguments over Newegg's evidence of bad faith.  Newegg may have no "smoking gun" admission from MacroSolve, but that is typical and expected of any litigant in Newegg's position because "[s]ubjective bad faith is difficult to prove directly."  *Kilopass*, 738 F.3d at 1311 (explaining that "[l]ack of *direct* proof of subjective bad faith" does not preclude fee shifting).  Newegg cannot reasonably be expected to have more direct evidence of bad faith than it does.  MacroSolve, by contrast, *should* be expected to have more countervailing evidence to support its allegations of good faith.  *Id.* at 1308, 1311 (evidence of good faith should be "easy to provide" if it exists). Courts must not be dismissive of strong circumstantial evidence as in this case, and should readily draw adverse inferences when plaintiffs cannot substantiate their claims of good faith.

## III. NEWEGG IS A PRINCIPLED AND RESPONSIBLE CORPORATE CITIZEN, NOT AN UNREASONABLE LITIGANT

MacroSolve casts aspersions at Newegg only to distract from its own bad faith.  Notwithstanding MacroSolve's cherry-picked colorful quotations from

Newegg's public statements, the facts simply do not support MacroSolve's overblown rhetoric painting Newegg as an unreasonable anti-patent crusader. Newegg may be principled in its views about patent litigation, but Newegg cannot be faulted for exercising its right to aggressively defend itself against meritless claims, and to seek fees when it believes a miscarriage of justice has occurred.

Notably, all of MacroSolve's arguments in this regard were presented (almost verbatim) to the district court, but formed no basis for the district court's judgment. A3282-84; A0001-12. To the extent this Court is inclined to consider such issues, Newegg will at least set the record straight.

According to MacroSolve, Newegg will move for attorneys' fees against any defendant that it considers a patent troll "no matter what" and "regardless of the merits," as a supposed "policy" and "solely" to intimidate plaintiffs like MacroSolve. MacroSolve Br. at 1, 11-13. But the fact is that Newegg has elected to settle litigation or not seek fees in the vast majority of its patent cases, including those brought by other non-practicing entities, even though Newegg did not believe that it infringed any valid claims. Sometimes Newegg elected not to seek fees even after it *prevailed* in court. *See, e.g., Soverain Software, LLC v. Newegg Inc.*, 705 F.3d 1333 (Fed. Cir. 2013) (claims held invalid on appeal; Newegg did not seek fees); *Alcatel-Lucent USA, Inc. v. Newegg Inc.*, 505 Fed. Appx. 957 (Fed. Cir. 2013) (complete defense verdict at trial summarily affirmed on appeal;

Newegg did not seek fees); *Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014) (summary judgment of invalidity affirmed on appeal; Newegg did not seek fees); *Kelora Systems LLC v. Newegg Inc.*, No. 4:11-cv-1548, 2012 U.S. Dist. LEXIS 70636 (N.D. Cal. May 21, 2012), *aff'd* 500 Fed. Appx. 953 (Fed. Cir. 2013) (summary judgment of invalidity affirmed on appeal; Newegg did not seek fees); *Speedtrack, Inc. v. Newegg Inc.*, No. 4:07-cv-03602-PJH (N.D. Cal. July 12, 2007) (Newegg prevailed but did not seek fees)*; Data Carriers, LLC v. Newegg Inc.*, No. 1:12-cv-00942-LPS (D. Del. July 19, 2012) (Data Carriers, like MacroSolve, unilaterally dismissed Newegg but Newegg did not seek fees); *Stambler v. Newegg Inc.*, No. 2:09-cv-00310-JRG (E.D. Tex. Oct. 7, 2009) (Newegg settled); *21 SRL v. Newegg Inc.*, No. 2:09-cv-06590 (N.D. Il. Oct. 20, 2009) (Newegg settled).  Newegg has been and will continue to be reasonable and selective in defending cases and seeking fees.

Newegg's public statements require more context than MacroSolve would like to give them.  Newegg is one of countless businesses suffering from the plight of meritless nuisance litigation in this country by entities like MacroSolve.  This is a well-known problem—one that Congress has been struggling to fix for the past several years.  The President of the United States recognizes that "[t]his type of abusive patent litigation is a major problem," and is essentially legalized "extort[ion]."    https://www.whitehouse.gov/blog/2013/06/04/taking-patent-trolls-

protect-american-innovation.  Even the Supreme Court has acknowledged the injustice caused by patent trolls and explained that Section 285 is supposed to be a "safeguard" against such abuse.  *Commil*, 135 S. Ct. at 1930-31.

What Newegg views as a "patent troll" depends not on the identity of the plaintiff, but on that owner's conduct with respect to its patents and litigation strategy.  As Newegg testified to Congress, "[a]ny entity or individual can be a patent troll by abusively asserting patents," particularly where those patents are of "bad quality" and are asserted "to extract premium payments because defendants need to avoid the high cost of litigation."  A3506; *see also* A3543 (patent trolls "'extract unjust premiums for often worthless patents because of weaknesses in our legal system'"); A3534, A3540 (patent trolls make "frivolous" allegations that "stretch credibility").  When Newegg's response to such an abusive patent asserter is along the lines of "screw them," it is because meritless infringement allegations have been repeatedly hurled at Newegg coupled with sentiments such as "'Hello, surprise! Give us your money or we will shut you down!'" or "we have 27,000 patents—and you probably infringe something, so give us a licensing fee." A3535; A3518.

Newegg concluded several years ago that knee-jerk capitulation to baseless settlement demands is bad for business and for society.  It encourages more lawsuits against Newegg and funds and enables the patentee to continue its abusive

campaign. A3543 ("[S]ettlement only feeds the beast."). When Newegg decided to make itself an "undesirable target" such that suing Newegg would be a "money-losing proposition" coming with "negative consequences," Newegg was emphasizing that: (a) it would not pay to settle meritless lawsuits just because it is easier and cheaper than defending the case; and (b) Newegg would defend itself fully intending to go through trial and win, paying nothing to the patent troll for all the troll's efforts (and costs incurred). *See, e.g.,* A3539 ("Instead of doing what everyone else did—including our competitors—we were going to figure out a way to vigorously and intelligently defend ourselves."); A3540 ("Newegg turned conventional wisdom on its head by proving that patent trolls could be soundly beaten anywhere.").

Newegg has made good on this promise to itself and its customers, and has defended and ultimately prevailed in every single case that has been brought to a judgment on the merits. *See, e.g., Soverain*, 705 F.3d 1333; *Alcatel-Lucent*, 505 Fed. Appx. 957; *Kelora Sys.,* 500 Fed. Appx. 953; *Digitech*, 758 F.3d 1344; *TQP Development, LLC v. Newegg Inc.*, No. 2:11-cv-248-JRG, ECF No. 461 (E.D. Tex. July 15, 2015) (granting Newegg's motion for judgment as a matter of law of noninfringement). Suing Newegg is indeed a "money-losing proposition" and "[p]atent trolls have largely stopped suing Newegg" as a result. A3548.

Cases like this appeal present a special circumstance where Newegg would have prevailed, but the plaintiff unilaterally dismissed the case to avoid that outcome.  When Newegg emphasized the importance of seeking fees from such plaintiffs and appealing adverse decisions, MacroSolve omitted the full context of that statement:

> We are proud of the work we are doing right now pursing justice against these smash and grab trolls that think that they can get away with suing companies and demanding $30,000 to $50,000 suing dozens of companies … and, gee, when they've collected enough money and they realize that some defendants won't settle like Newegg, they actually just dismiss the lawsuit with prejudice.  … They say 'mulligan, oh, you spent a couple hundred thousand on defense, mulligan. Thank you for everyone else's money. What are you going to do to us?'  So our position is well screw you guys. We are going to make you remember that when you file a frivolous lawsuit against Newegg, it's going to have a negative consequence.

A3550, at 28:30-29:16 (https://twit.tv/shows/this-week-in-law/episodes/229). What Newegg objects to is precisely what this Court has described as abusive patent litigation. *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011) ("[L]ow settlement offers … effectively ensure[] that [the patentee's] baseless infringement allegations remained unexposed, allowing [the patentee] to continue to collect additional nuisance value settlements.").  Absent seeking fees, Newegg has no realistic recourse when subjected to such "smash and grab" litigation abuses. The fact that Newegg has filed a handful of fee motions (five total) and subsequent appeals involving similar situations reflects no more than the fact that Newegg has

been subjected to this precise kind of injustice on several occasions.  *See, e.g., SFA Systems,* 793 F.3d at 1345-1346; *Pragmatus Telecom LLC v. Newegg Inc.*, No. 2014-1777, 2015 U.S. App. LEXIS 13624, at *2-3 (Fed. Cir. July 31, 2015); *AdjustaCam, LLC v. Newegg Inc.*, Appeal No. 13-1665 (Fed. Cir.) (pending).  It certainly does not call the merits or good-faith bases of Newegg's motions and appeals into question.  Newegg strongly believes that this particular abusive litigation strategy must be meaningfully within the reach of Section 285.

Newegg also believes in "doing what [it] believes is right—rather than what is convenient."  A3540.  Part of this mission requires Newegg to try to move the law in a positive direction.  A3548 ("[W]e believe that we have an obligation to do our part, because we can, to help fight injustice and change deficiencies in the law."); A3534 ("[W]e want to accomplish the purpose of making good law. … It's part of our duty as a good corporate citizen to try to accelerate the rationalization of patent law.").  The playing field is far from level if Section 285 cannot meaningfully deter plaintiffs like MacroSolve.  A3547 (explaining that "under our present legal system, trolls who file completely frivolous suits face almost no negative consequences," and that generally "the worst that can happen to a troll under legal standards heavily favoring plaintiffs, is that they will make less money").  Few defendants in Newegg's position would be willing to incur the burden and expense of seeking true justice (for itself and for the benefit of other

similarly-situated companies) when they have the option to simply walk away and cut their losses. Newegg should be commended, not demonized.

## IV.    NEWEGG DID NOT ACT UNREASONABLY IN DEFENDING THIS LAWSUIT

MacroSolve contends that Newegg unreasonably defended this action by, for example, serving voluminous invalidity contentions and aggressively seeking summary judgment of invalidity. MacroSolve Br. at 6-7. MacroSolve made all of these arguments (almost verbatim) to the district court, but these issues formed no basis for the district court's judgment. A3278-80; A0001-12. In any event, MacroSolve is wrong that Newegg acted unreasonably.

First, in Newegg's experience, cases involving many defendants typically have invalidity contentions just as substantial as those served against MacroSolve. The district court recognized as much and had specifically denied MacroSolve's early request to limit the defendants' invalidity theories. A0065, A0078 (docket nos. 265 and 414). MacroSolve alleges that it made "repeated requests" to limit Newegg's invalidity theories, but it never renewed this motion with the district court. MacroSolve Br. at 6.

Second, Newegg did not file a summary judgment motion improperly relying on the Kloba patent. MacroSolve Br., at 6-7. Newegg's summary judgment motion was based on a different patent to Aufricht, which MacroSolve does not dispute was properly in Newegg's contentions. A1791. Newegg's motion

simply cited portions of the Kloba patent because that patent, which was issued from the parent application to Aufricht, was incorporated by reference in the Aufricht patent and thus is treated as part of one and the same document. A1791 n.1 (citing *Advanced Display Systems, Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000) ("Material not explicitly contained in the single, prior art document may still be considered for purposes of anticipation if that material is incorporated by reference into the document."); A1852 (incorporation of Kloba patent "in [its] entiret[y]").

Third, while MacroSolve believes that Newegg improperly "attempted to assert an 'unclean hands' defense," it was *MacroSolve* that affirmatively moved for summary judgment of "no unclean hands," and even then only "*to the extent* Newegg [was] trying to assert an unclean hands defense." MacroSolve Br. at 7; A2999 (emphasis added). MacroSolve omits that although Newegg did not plead an unclean hands defense, discovery revealed that MacroSolve had apparently concealed the true inventorship of the patent-in-suit, and Newegg moved the district court for leave to amend its answer to plead the defense of incorrect inventorship. A5000-01; A2999. Newegg's motion remained pending and unresolved when MacroSolve dismissed Newegg. Newegg did nothing wrong by merely opposing MacroSolve's motion seeking judgment of "no unclean hands" in this context, where there were clearly disputed factual issues.

Fourth, while MacroSolve praises its "limit[ed]" and "targeted discovery against Newegg," the record shows that this is because MacroSolve cared so little about the merits that it failed to make a plausible record of infringement, and that MacroSolve expected Newegg to settle eventually. In any event, MacroSolve's argument that it "acted reasonably in prosecuting the action" is no safe harbor even if it was true. MacroSolve Br. at 5-6. Litigation misconduct is not a prerequisite for fee shifting post-*Octane Fitness* as long as the case otherwise "stands out from others." 134 S. Ct. at 1756-57 (rejecting "inflexible framework" that required proof of sanctionable litigation misconduct as an avenue for fee shifting). Any rule to the contrary would allow frivolous bad-faith litigation to be immunized from fee shifting as long as the plaintiff did not break any rules of discovery. That kind of "overly rigid" view of exceptionality is exactly what *Octane Fitness* overruled. *Id.* at 1756.

Finally, MacroSolve argues that Newegg acted unreasonably by not agreeing to MacroSolve's "walkaway" proposal, and by seeking its fees. MacroSolve Br. at 7. MacroSolve ignores the fact that it *rejected* Newegg's previous one-time offer of a walkaway. A3691. At that time, which was months before the bulk of expert discovery and pretrial motions briefing, MacroSolve attempted to intimidate Newegg into settling, contending that Newegg should pay what others have paid to settle because the case was "about to get expensive." A3691; A3699

(MacroSolve's September 11, 2013 email to Newegg: "You are aware of the average settlement and we would hope for a counteroffer at least near that number."). Especially when MacroSolve scoffed at the chance to walk away from its meritless case before the case "got expensive," it is *not* unreasonable for Newegg, having been subjected to the burden and expense of defending against baseless claims, to seek fees. MacroSolve's later walkaway offer was merely an attempt to shield MacroSolve from any adverse judgment or other negative consequences of its baseless lawsuit. The fact that Newegg was the sole defendant willing to seek fees only confirms that MacroSolve has been successful leveraging the cost of litigation to subdue MacroSolve's targets—it does not legitimize MacroSolve's lawsuits. MacroSolve Br. at 10-11.

## V.    NEWEGG DID NOT WAIVE THE ARGUMENTS IDENTIFIED BY MACROSOLVE

According to MacroSolve, Newegg waived arguments concerning the "questionnaire" requirement, contributory infringement, and expert fees for appeal by not including them in Newegg's objections to the magistrate judge's initial order denying Newegg's motion. MacroSolve Br. at 21, 30, 36.[4]

First, Newegg did object to the substance of the magistrate judge's order on all the issues MacroSolve identifies. Newegg argued that the magistrate judge "did not consider the totality of the circumstances," including "a discussion of the

---

[4] Other half-hearted waiver contentions by MacroSolve are addressed in the sections above, where appropriate.

strength of MacroSolve's case." A3755. This subsumes the fact that the district court neglected to assess any of Newegg's merits-based arguments, including the "series of questions" and contributory infringement issues.[5] The "defect in the order" was that no findings were made on those issues despite Newegg's arguments. Fed. R. Civ. P 72(a). Moreover, if Newegg's motion for reconsideration did not fairly raise these issues, there would have been no need for MacroSolve to address those issues in opposing Newegg's reconsideration motion, but MacroSolve did. A3762 (MacroSolve addressing "questionnaire" claim requirement); A3764 (MacroSolve discussing contributory infringement). Newegg also fairly objected to the magistrate judge's order regarding expert fees, as the order inextricably tied the inherent authority analysis to the finding on exceptionality. A0012 (denying expert fees "for the same reasons" that it denied attorneys' fees).[6]

---

[5] Newegg's contributory infringement positions are also not waived. MacroSolve affirmatively raised contributory infringement in its opposition brief to Newegg's fee motion. MacroSolve Br. at 30 (citing A3274); *see also* A3703-04 (MacroSolve's surreply). For Newegg's response in its reply brief (A3689) to be deemed waived "would result in basically unfair procedure" such that waiver does not apply. *Becton Dickinson and Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 800 (Fed. Cir. 1990).

[6] The level of specificity for Rule 72(a) objections is clearly less onerous than under Rule 72(b) concerning dispositive findings by a magistrate judge. Rule 72(a) requires only "objections," while Rule 72(b) requires "specific written objections."

In any event, although Newegg did submit objections, Newegg was not obligated to object to the magistrate judge's initial order to preserve the right to appeal these issues under Rule 72. Under the law of the Fifth Circuit, which governs this issue for this appeal,[7] at most, any failure to sufficiently object would merely limit appellate review of unobjected-to issues to the plain error standard. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc) ("[A] party's failure to file written objections … shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court."); *id.* at 1424 (plain error includes "clear" or "obvious" error that "affect[s] substantial rights").

But a major exception is that this rule only applies "provided that the party has been served with notice that such consequences will result from a failure to object." *Id.* at 1429; *United States ex rel. Steury v. Cardinal Health Inc.*, 735 F.3d 202, 205 n.2 (5th Cir. 2013) ("[P]lain error review applies when a party did not object to a magistrate judge's findings of fact, conclusions of law, or recommendation to the district court, so long as the party was served with notice of the consequences of failing to object.") (citing *Douglass*, 79 F.3d at 1428-29). No such notice accompanied the order of the magistrate judge here. A0007-12.

---

[7] "For issues not unique to patent law, we apply the law of the regional circuit in which this appeal would otherwise lie." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 841 (Fed. Cir. 2010).

Although Newegg styled its motion for reconsideration of the magistrate judge's order as a hybrid motion for reconsideration and Rule 72 objections, this was done only in an abundance of caution.  A3753-54.  There was no waiver.

## CONCLUSION

The judgment should be reversed and the case should be remanded to determine Newegg's recoverable attorneys' fees, expert fees, and other non-taxable expenses.  Alternatively, at a minimum, the judgment must be vacated and the case remanded for reconsideration under the correct exceptionality standard.


Respectfully submitted,


Dated:  September 8, 2015    /s/ *Daniel H. Brean*
Kent E. Baldauf, Jr.
Daniel H. Brean
Bryan P. Clark
Christian D. Ehret
THE WEBB LAW FIRM
One Gateway Center
420 Fort Duquesne Blvd.
Suite 1200
Pittsburgh, PA 15222
Telephone:  (412) 471-8815

Mark. A. Lemley
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 362-6666

Richard G. Frenkel
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 463-3080

*Counsel for Appellant Newegg Inc.*

## **CERTIFICATE OF SERVICE**

This is to certify that on September 8, 2015, the foregoing Reply Brief of

Defendant-Appellant was served on counsel for Plaintiff-Appellee MacroSolve,

Inc. via the Court's ECF system and via electronic mail upon the following:

Matthew Antonelli
Califf T. Cooper
Zachariah Harrington
Larry D. Thompson, Jr.
ANTONELLI, HARRINGTON & THOMPSON, LLP
4306 Yoakum Boulevard
Houston, TX 7706
Telephone: (713) 581-3000
matt@ahtlawfirm.com
califf@ahtlawfirm.com
zac@ahtlawfirm.com
larry@ahtlawfirm.com


/s/ *Daniel H. Brean*
Daniel H. Brean
*Counsel for Newegg Inc.*

33

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that the body of this brief, beginning with the Argument on page 1, and ending with the last line of the Conclusion on page 31, including headings, footnotes, and quotations, is presented in Times New Roman 14-point font and contains 6,874 words, in compliance with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii).


/s/ *Daniel H. Brean*
Daniel H. Brean
*Counsel for Newegg Inc.*